Carl Trotte v. Commissioner.
Trotte v. Commissioner
Docket No. 5445-63.
United States Tax Court
T.C. Memo 1966-129; 1966 Tax Ct. Memo LEXIS 153; 25 T.C.M. (CCH) 656; T.C.M. (RIA) 66129; June 16, 1966
Joseph Pearle, 211 Laurelton Blvd., Long Beach, N. Y., and Robert G. Burke, for the petitioner. Charles M. Greenspan, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in the Federal income tax of petitioner and additions to tax for the years 1955 and 1956 in the following amounts: Addition to Tax
Year
Income Tax
Sec. 6653(b) [1]
1955
$10,459.58
$5,729.79
1956
7,442.83
3,721.42 Code of 1954 unless otherwise noted. Petitioner has conceded the correctness of sole issue of whether or not any part of petitioner's underpayment is due to fraud, thereby making him liable for the additions to tax asserted by respondent under section 6653(b). Findings of Fact Some facts are stipulated and are found accordingly. Petitioner is a resident of Brooklyn, New York. Petitioner, who has been a securities trader continuously since 1922, was employed by the Aetna Securities Corporation from April 1949 to May 1961 and was its sole securities trader during the years in issue. Petitioner filed Federal income tax returns for 1952, 1953, and 1954, the last of which was audited by respondent, a deficiency found, and a waiver of restrictions on assessment and collection executed by petitioner and received by respondent on April 23, 1956. During the taxable years 1955 and 1956 petitioner received the following income: Source
1955
1956
Wages from Aetna
$20,379.54
$11,700.00
Net gain from securities
transactions
15,635.56
15,895.19
Dividends on securities
430.50
210.00
Petitioner was furnished with withholding tax statements by Aetna showing withholdings of $3,504.54 for 1955 and $1,996.00 for 1956 prior to April 15 of the year following the year which the statements covered. Prior to April 15, 1956 and April 15, 1957, respectively, petitioner knew that he was required to file Federal income tax returns for the calendar years 1955 and 1956, respectively, and report said income. Petitioner obtained an extension of time to file his 1955 return. Petitioner did not file any such returns for either year. After respondent received information that F. W. MacDonald & Co., Inc., a brokerage firm in New York City, had been closed down by the Attorney General of New York, an agent of respondent, Murray L. Waldman, was assigned to make a preliminary investigation regarding the petitioner, whose name appeared on the list of customers of that brokerage firm. For the purposes of investigating petitioner's 1955 and 1956 returns, Waldman met with petitioner on Thursday, June 4, 1959. At that meeting, [2] petitioner told Waldman that he had filed returns for 1955 and 1956 in the Brooklyn district of New York, that he could not remember if he filed one for 1957, but that he knew he did not file for 1958 because he did not have the money with which to pay the tax owing. Petitioner also told Waldman at the June 4, 1959 meeting that he maintained a security account at no brokerage house other than Aetna. *154 Subsequent to the meeting on June 4, 1959, an investigation by Waldman disclosed that there were no records of Federal income tax returns having been filed by petitioner with the Brooklyn district director for either 1955 or 1956 and that petitioner maintained brokerage accounts and entered into securities transactions with the following stock brokerage firms during the taxable years 1955 and 1956: [3]
Brokerage Firm
Years
Gordon Graves & Co.
1955
T. A. Richardson & Co.
1955
Reed Lear & Co.
1955
Thomson Kernaghan & Co., Ltd.
1956
Carreau & Company
1955, 1956
F. W. MacDonald & Co., Inc.
1955, 1956
John J. O'Kane, Jr. & Co.
1955, 1956
*155 On February 14, 1958, the petitioner executed a "Supplement to Application for Registration as a Registered Representative" on a form prepared by the National Association of Securities Dealers, Inc. The following statement was contained in such form: 29. The following is a complete list of all brokers, dealers or banks with which I am carrying accounts in securities or commodities or with which I have carried such accounts during the past 10 years (indicate in each case whether account is still open, and whether it is a cash or margin account). (Names, addresses and approximate dates) As a complete answer to this statement the petitioner wrote in, "AETNA SECURITIES CORP. - CASH -." The petitioner signed a witnessed certification at the end of said form, reading, "I hereby certify that the statements made herein are true and complete." On June 16, 1961, Waldman met with Joseph Pearle, petitioner's authorized representative. At such meeting Pearle, in accordance with the prior request of Waldman, produced pencilled copies of proposed income tax returns of petitioner for the taxable years 1955 and 1956 which he stated were correct. In response to questions as to whether there *156 "returns" were complete and included all the income of petitioner and whether petitioner had any brokerage accounts other than Aetna, which was the only one actually included in these "returns," Pearle stated that he had consulted with petitioner and that to the best of his knowledge they were complete and petitioner had no other accounts. On March 27, 1962, an information was filed against the petitioner in the United States District Court for the Eastern District of New York, under section 7203, containing charges of willful failure to file Federal income tax returns for the taxable years 1955 and 1956. On June 14, 1962, petitioner pleaded guilty as to Count 1, dealing with 1955, and on July 19, 1962 was sentenced to six-months' confinement. Count 2, dealing with 1956, was dismissed. On August 15, 1962, the sentence was reduced to 25 days. Petitioner's understatement of income was due to fraud. Opinion The sole issue herein is whether petitioner is subject to the 50 percent fraud penalty imposed by section 6653(b). [4] The burden of proof is, of course, upon respondent [5] and the decided cases are legion to the effect that he must meet this burden by clear and convincing evidence. *157 The taxpayer is thus sheltered by a protective curtain. But respondent need not utterly destroy the curtain. It is enough if he endows it with a sufficient degree of transparency so that the taxpayer's fraud is readily discernible. We are aware that mere failure to file an income tax return, without other proof, will not support a finding of fraud within the meaning of section 6653(b). (C.A. 8, 1953). Nor is a showing of willful failure to file a return *158 sufficient proof of fraud, at least where the taxpayer furnishes an acceptable explanation for his failure. (C.A. 5, 1958), reversing . However, willful failure to file, not satisfactorily explained, may constitute sufficient evidence of fraud to justify the imposition of the 50 percent fraud penalty. ; . Petitioner herein was a securities trader apparently well versed in the affairs of the financial world. He not only did not file his 1955 and 1956 returns when he knew they were due [6] but he was aware prior to the due dates that he had sizeable amounts of income which were required to be reported. Petitioner did testify that he had certain problems arising out of a combination of his wife being an invalid and of marital difficulties he had with her. But this testimony was primarily directed to the availability of certain of petitioner's records and not to his failure to *159 file the 1955 and 1956 returns. Nor is petitioner protected because he received withholding statements of his earned income and therefore thought that his failure to file returns would sooner or later be discovered. See . We do not consider it significant, as petitioner suggests, that the criminal charges against petitioner involved only the misdemeanor of willful failure to file and not the felony of willful attempt to evade or defeat any tax under section 7201. Similarly, the fact that the charge of willful failure to file for 1956 was dismissed is immaterial. Such elements can readily be explained by the higher standard of burden of proof which has to be met in criminal cases. See . Moreover, petitioner embroidered the pattern of fraud. At the meeting with the revenue agent on June 4, 1959, he stated that he had filed returns for 1955 and 1956 when in fact he had not done so. Furthermore, when queried by the revenue agent as to the existence of brokerage accounts, he responded that he had only one such account and continued to conceal the fact that he had several other accounts. *160 [7] The pencilled copies of returns that petitioner's representative Pearle gave the revenue agent did not mention the other accounts. While these were not signed by petitioner, they were prepared from information given to Pearle by petitioner and submitted with his knowledge and approval. [8]
*161 On the basis of an examination of the entire record herein, we are left with the firm conviction that respondent has met his burden of proving that petitioner's actions constitute fraud within the meaning of section 6653(b). Decision will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue the deficiencies, leaving for our decision the ↩
2. There is a direct conflict in the testimony as to whether the meeting took place at Waldman's office or petitioner's office. Aside from the issue of credibility, we do not consider the place of the meeting material.↩
3. The accounts at Gordon Graves & Co. and Carreau & Company were in the name of petitioner's wife, Betty Trotte. However, petitioner, on brief, admits they were his accounts. The total number of transactions during the years 1955 and 1956 with each firm varied from two with Reed Lear & Co. to 238 with F. W. MacDonald & Co., Inc.↩
4. SEC. 6653. FAILURE TO PAY TAX. * * *
(b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). ↩
5. SEC. 7454. BURDEN OF PROOF IN FRAUD AND TRANSFEREE CASES. (a) Fraud. - In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary or his delegate.↩
6. Petitioner, among other things, testified that he applied for and received an extension of time to file his 1955 return.↩
7. In several respects, the testimony of petitioner directly conflicts with that of the revenue agent. While the latter's recital was lacking in bullet-like precision, we find it more believable than petitioner's categoric portrayal. In this connection, we note that petitioner flatly denied that he had ever had occasion to indicate to the National Association of Securities Dealers how many brokerage accounts he maintained, although he was registered with the NASD and had filed at least one "Supplement to Application for Registration as a Registered Representative" in February 1958 in which he falsely certified as to the brokerage accounts he had during the previous 10 years. ↩
8. It is significant that, as to petitioner's involvement in the preparation and submission of the returns, both petitioner and Pearle heard the revenue agent's testimony but petitioner did not testify on this point and Pearle did not take the stand.↩